# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MERWIN SAM SUTHERLAND,

       Defendant-Appellant.

UNPUBLISHED
February 26, 2015

No. 318879
Barry Circuit Court
LC No. 12-100081-FH

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Defendant, Merwin Sam Sutherland, appeals as of right his jury trial conviction for assault and battery, MCL 750.81(1). The trial court sentenced him to 45 days in jail and 24 months of probation. We affirm.

## I. PERTINENT FACTS

Defendant's conviction arises out of an altercation that led to the death of Randy Baker outside the Woodland Townhouse bar on North Main Street in Woodland. On January 7, 2012, defendant and Randy were at the bar. One witness testified that upon defendant's arrival at the bar, Baker became tense; however, another witness testified that defendant and Baker were friends. While defendant was at the establishment, he sat at the bar with Baker and they discussed military service. Witness testimony differed regarding whether the conversation escalated into an argument.

Witnesses testified that after the bar closed and people were walking to their cars, defendant and Baker got into an argument when some bystanders made a comment about one of Baker's acquaintances, Michelle Bender. Baker's ex-wife, Deborah Baker, testified that Baker began swearing at defendant. According to Deborah, defendant shoved Baker against the outside wall of the bar, causing Baker to fall to the ground. Later, defendant and Baker began walking away, and Baker, who was intoxicated, fell to the ground once again. It appeared to Deborah that defendant was going to strike Baker while he was on the ground, so she called out to him in order to stop him from hitting Baker. Defendant complied with her request, and Baker got up and resumed walking down the street.

Baker and defendant began to argue as they continued walking down the street. Eventually, defendant punched Baker one time in the face, knocking him to the ground. It was

-1-

undisputed that Baker fell to the ground after the punch, striking his head. Approximately one week later, Baker died from injuries suffered in the fall.

According to some of the witnesses present, defendant and Baker were some distance apart immediately preceding the punch, and defendant ran toward Baker before ultimately striking the fatal blow. One witness recalled that defendant was approximately 150 feet away from Baker and that defendant ran toward Baker in order to punch him. The witness recalled that, preceding the punch, Baker yelled obscenities at defendant. Another witness recalled that Baker was approximately 60 feet away from defendant when defendant decided to run toward and strike him. According to this witness, defendant could have gotten into his vehicle and left, but he turned to run toward Baker.

Defendant testified on his own behalf and admitted that he punched Baker, but claimed that he acted in self-defense. According to defendant, Baker, who was much larger, was behaving aggressively toward him. After the incident with Bender, Baker said something about inflicting violence on someone and pointed at defendant while saying this. The way Baker looked at him while saying this made defendant believe that Baker intended to harm him. Defendant, along with Ronald Piercefield, a defense witness, testified that Baker charged at defendant. Defendant testified that he initially backed away from Baker, but Baker continued to come after him. One of the bartenders, Jessica Dies, corroborated defendant's testimony that Baker pursued defendant after they left the bar. Defendant testified that Baker continued to walk toward him despite his attempts to ward off an altercation, which prompted him to tell Baker that he would punch him if he continued to approach. According to defendant, Baker continued to approach, so defendant punched him. Defendant testified that he felt he needed to protect himself from Baker.

The jury convicted acquitted defendant of a charge of involuntary manslaughter, but convicted him of the lesser offense of assault and battery.

## II. MRE 404(b) EVIDENCE

Before trial, the prosecution moved the trial court to admit evidence of several prior acts under MRE 404(b). Some of the evidence was admitted at trial and some of it was excluded for reasons not relevant to this appeal. The only evidence at issue on appeal is testimony from Brandy Logan, a bartender at the Pit Row bar, indicating that in the winter of 2011, Baker, at Logan's request, escorted defendant and Piercefield out of that bar. Logan did not testify concerning the reason why she asked Baker to escort defendant and Piercefield from the bar. The prosecution proffered this evidence for the purpose of showing that defendant may have had a motive to fight with Baker on the night of January 7, 2012, and therefore he did not punch Baker in self-defense. The trial court admitted the evidence for that purpose. When testifying on his own behalf, defendant recalled that he had been escorted out of the bar, but did not remember that it was Baker who had escorted him. Likewise, Piercefield did not remember that it was Baker who had escorted him out of the bar. Defendant claims that Logan's testimony was not relevant to the purpose for which it was offered and that its probative value was substantially outweighed by the unfair prejudice to defendant.

We review this preserved evidentiary issue for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). Evidence of other crimes, wrongs, or acts "is inadmissible to prove a propensity to commit such acts." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). However, such evidence may be admissible for other purposes under MRE 404(b)(1), which states as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To determine admissibility under MRE 404(b), this Court uses the following standard. First, the evidence must be offered "for a proper purpose under Rule 404(b)[.]" *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Second, the evidence must be relevant under MRE 402. *Id.* Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice. *Id.* If the trial court deems the evidence admissible, it may, upon request, provide a limiting instruction to the jury. *Id.*

Here, the prosecution offered evidence that Baker escorted defendant out of the Pit Row bar to show that defendant had a motive to assault Baker. This was a proper purpose under MRE 404(b)(1). *People v Hoffman*, 225 Mich App 103, 105; 570 NW2d 146 (1997). Prior acts by a victim may be relevant under MRE 404(b) to the issue of self-defense to show a defendant's motive. *People v Taylor*, 195 Mich App 57, 61; 489 NW2d 99 (1992). Because the prosecution offered this evidence for a proper purpose under MRE 404(b), the first prong of the *VanderVliet* standard is satisfied. *VanderVliet*, 444 Mich at 55.

With regard to relevance, the prosecution argues that the prior incident between the men is relevant to show that defendant may have had a motive for starting an altercation with Baker, i.e., revenge for Baker forcing defendant to leave the Pit Row. Defendant argued that he punched Baker in self-defense, and the trial court instructed the jury as to the elements of self-defense. Self-defense excuses an otherwise unlawful act where "the defendant acted out of fear of death or serious bodily harm." *People v Dupree*, 284 Mich App 89, 100-101; 771 NW2d 470 (2009). The fact that defendant may have had a motive for punching Baker other than his alleged fear of death or serious bodily harm was relevant for determining whether he punched Baker in self-defense. See *Taylor*, 195 Mich App at 59-61. Therefore, the evidence was relevant under MRE 404(b) and the second prong of the *VanderVliet* standard is satisfied. *VanderVliet*, 444 Mich at 55.

In arguing that the evidence was irrelevant, defendant points to his testimony on direct examination in which he stated that he did not recall Baker being present when he was escorted out of the Pit Row. According to defendant, if he did not know that Baker was the person who escorted him out of the Pit Row, the evidence was not probative of his motive. We disagree. Defendant's challenge goes to the weight of the evidence, not its admissibility, and weighing the evidence was a task for the jury. See *People v Wager*, 460 Mich 118, 126; 594 NW2d 487

(1999) (a challenge as to the weight of evidence "is for the parties to argue before the finder of fact.").

Even if evidence is relevant under 404(b), it is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice. *VanderVliet*, 444 Mich at 55, 74-75; MRE 403. For evidence to be unfairly prejudicial, there must be a probability that "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect . . . ." *People v Murphy (On Remand)*, 282 Mich App 571, 583; 766 NW2d 303 (2009) (quotation marks omitted). The evidence that Baker escorted defendant out of the Pit Row bar was probative to show that there may have been "bad blood" between the two, as the trial court characterized the evidence, and that defendant may not have simply punched Baker in self-defense. *Taylor*, 195 Mich App at 59-61. And the probative value of the evidence was not outweighed by a danger of unfair prejudice. Generally, such a danger exists when evidence of prior acts creates a danger that a jury will conclude that because a defendant committed a certain bad act in the past, he must have had a propensity to commit the charged act. *Crawford*, 458 Mich at 398. However, in this case, the evidence regarding the Pit Row incident did not address defendant's behavior at all, only what Baker did to him. Therefore, there was little danger that the jury impermissibly inferred from the evidence that defendant committed the crimes for which he was charged. *Id.* In sum, the evidence was admissible under 404(b), *VanderVliet*, 444 Mich at 55, and the trial court did not abuse its discretion in admitting this evidence, *Orr*, 275 Mich App at 588.[1]

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

---

[1] In addition to challenging the other-acts evidence for the purpose of showing motive, defendant argues that the trial court abused its discretion by admitting the other-acts evidence to show a common plan or system. The record does not support this assertion of error, as the record reveals that the evidence was neither admitted nor used for such a purpose. Thus, we need not address this assertion of error.

-4-