PEOPLE v HOFFMAN

Docket No. 191445. Submitted June 3, 1997, at Detroit. Decided August 19, 1997, at 9:00 A.M.

Claude T. Hoffman was convicted by a jury in the Saginaw Circuit Court, Leopold P. Borrello, J., of assault with intent to commit murder and kidnapping. He was sentenced to concurrent terms of fifteen to thirty years' imprisonment for the convictions. The defendant appealed.

The Court of Appeals *held*:

1. The court did not err in admitting other-acts evidence for the purpose of establishing the defendant's motive. The evidence was relevant and material with regard to the defendant's motive for his attack on his victim. The court did not abuse its discretion in ruling that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice.

2. There was sufficient evidence to support the convictions.

Affirmed.

1. EVIDENCE — OTHER ACTS — ADMISSIBILITY — PROPER PURPOSE — WORDS AND PHRASES — MOTIVE.

Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b) if the evidence is offered for a proper purpose rather than to prove the defendant's character or propensity to commit the crime, is relevant to an issue or fact of consequence at trial, and is sufficiently probative to prevail under the balancing test of MRE 403; establishing motive is a proper purpose for which prior-acts evidence is admissible; "motive" is the moving power that impels to action for a definite result or that which incites or stimulates a person to do an act; it is the cause or reason that moves the will and induces action or is an inducement or that which leads or tempts the mind to indulge a criminal act.

2. KIDNAPPING — CONFINEMENT OF VICTIM.

A kidnapping conviction may be premised on a showing of confinement that in fact is secret or upon a showing of forcible seizure or confinement with intent to secretly confine, whether or not the confinement remains a secret (MCL 750.349; MSA 28.581).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Janet M. Boes*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Charles J. Booker*) and Claude T. Hoffman, in propria persona, for the defendant on appeal.

Before: TAYLOR, P.J., and GRIFFIN and SAAD, JJ.

GRIFFIN, J. Following a jury trial, defendant was convicted of assault with intent to commit murder, MCL 750.83; MSA 28.278, and kidnapping, MCL 750.349; MSA 28.581. Defendant was sentenced to concurrent terms of fifteen to thirty years' imprisonment. He appeals his convictions as of right. We affirm and hold, inter alia, that "other-acts evidence" tending to establish that defendant hated women was properly admitted at trial for the purpose of proving defendant's motive for his brutal and depraved actions.

I

Defendant first contends that the trial court abused its discretion in admitting testimony from two women whom defendant had allegedly assaulted and battered and to whom he had expressed his general hatred toward women. We disagree. The decision whether to admit evidence is left to the discretion of the trial court. *People v Gibson*, 219 Mich App 530, 532; 557 NW2d 141 (1996). This Court will find an abuse of discretion only when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling.

*People v Taylor*, 195 Mich App 57, 60; 489 NW2d 99 (1992).

In *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), our Supreme Court held that evidence of other crimes, wrongs, or acts is admissible under MRE 404(b) if such evidence is (1) offered for a proper purpose rather than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to prevail under the balancing test of MRE 403. MRE 404(b) is consistent with an inclusionary, not exclusionary, theory of admissibility.[1] *VanderVliet, supra* at 64-65; *People v Sabin*, 223 Mich App 530, 533; 566 NW2d 677 (1997). Establishing motive is among the purposes for which prior-acts evidence is expressly admissible. MRE 404(b),[2] *People*

---

[1] Michigan has now joined with a number of other jurisdictions in labeling MRE 404(b) as a rule of inclusion, not exclusion. However, this characterization has been criticized by a leading authority as being inaccurate:

As we have noted, the Federal and Revised Uniform Rules state the general rule as one of exclusion. See *supra* § 186. But see § 190, at 558 note 9, collecting cases that characterize Rule 404(b) as "inclusionary." The term "inclusionary" is poorly chosen, however, for it merely indicates that the enumeration of issues in Rule 404(b) as to which evidence of other crimes or bad acts may be introduced is not exhaustive. The rule remains an exclusionary one: it keeps certain evidence out. [1 McCormick, Evidence (Practitioner Treatise Series, 4th ed), § 188, p 793, n 7.]

[2] MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

*v Harris*, 219 Mich App 184, 186; 555 NW2d 891 (1996).

No Michigan case defines the term "motive" as it appears in MRE 404(b). However, motive is defined by Black's Law Dictionary (rev 5th ed) as:

> Cause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act. *People v Lewis*, 275 NY 33; 9 NE2d 765, 768 [1937].
>
> In common usage intent and "motive" are not infrequently regarded as one and the same thing. In law there is a distinction between them. "Motive" is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result. "Motive" is that which incites or stimulates a person to do an act. *People v Weiss*, 252 App Div 463; 300 NYS 249, 255 [1937].

See also *State v Stevens*, 93 Idaho 48; 454 P2d 945 (1969); *Rodriguez v State*, 486 SW2d 355, 358 (Tex Crim App, 1972); 21 Am Jur 2d, Criminal Law, § 133, p 267. We agree with the above Black's Law Dictionary definition and hereby adopt it as our own.

In the present case, the victim, who had been living with defendant, testified that defendant often became agitated when speaking of his old girlfriends, describing them as evil "bitches." The victim further testified that, on one occasion when defendant became particularly vehement in expressing hostility against his former girlfriends, she became frightened and tried to flee. However, defendant caught her, knocked her down, and brutally beat her. Defendant then dragged the victim into his house, stripped her naked, tied her up, and threatened to burn her nipples off with hydrochloric acid, make her perform fellatio on his dog,

torch her hair, inject bleach in her veins, and "kill [her] and chop [her] up and make [her] into stew."

In an effort to establish that defendant's actions were motivated by his misogyny (hatred of women), the prosecutor called two of defendant's former girlfriends, who testified that defendant had beaten and threatened them. One of the witnesses testified that defendant told her that "women are all sluts and bitches and deserve to die." The people argue that the testimony of the former girlfriends was other-acts evidence admissible for the purpose of proving defendant's motive. However, defendant claims that the trial court abused its discretion in allowing such evidence because its only relevance was to establish defendant's character or propensity toward violence.

The distinction between admissible evidence of motive and inadmissible evidence of character or propensity is often subtle. The following hypothetical may clarify the differentiation:

> In midafternoon, on the outskirts of a rural Michigan village, an African-American man is savagely assaulted and battered by a white assailant. The assailant neither demands nor takes any money or property. The assailant is a total stranger to the victim. The defendant is later apprehended and charged with the attack. After the arrest, the prosecutor discovers that the defendant had been involved in several other violent episodes in the past, including bar fights, an assault on a police officer, and a violent confrontation with a former neighbor.

Absent a proper purpose (such as to prove a common plan, scheme, or other exception), this other-acts evidence would be inadmissible because its only relevance is to establish the defendant's violent character or propensity towards violence. See, generally, 1

McCormick, Evidence (Practitioner Treatsie Series, 4th ed), §§ 188, 190, pp 792-793, 797-812. However, if we were to add to this hypothetical the fact that all the defendant's prior victims were African-American and that defendant had previously expressed his hatred toward blacks, then the evidence of the defendant's prior assaults would be admissible to prove the defendant's motive for his conduct. By establishing that the defendant harbors a strong animus against people of the victim's race, the other-acts evidence goes beyond establishing a propensity toward violence and tends to show why the defendant perpetrated a seemingly random and inexplicable attack.

The distinction made in the above hypothetical is exemplified in *New Jersey v Crumb*, 277 NJ Super 311; 649 A2d 879 (App Div, 1994), wherein the Superior Court of New Jersey, Appellate Division, held that evidence of a defendant's bigotry was admissible to establish the defendant's motive for randomly attacking an elderly black man. In *Crumb*, the defendant was accused of striking an elderly black man in the back of the head, and then kicking and stomping on the fallen victim's face and chest. *Id.* at 313. Apparently, the victim was not robbed, because approximately $127 in cash was found in his wallet. *Id.* The testimony established that the defendant told a friend that he had beaten up "an old black bum . . . just because he was there . . . ." *Id.* at 314. In an attempt to prove that the defendant's racism motivated the attack, the prosecutor in *Crumb* sought to introduce some letters, verse, and drawings found in the defendant's apartment that contained phrases such as: "Die N..... Scum," "White is Right," "Nazi

Pretty Boys," and "Kill them F...... N...... ." *Id.* at 315-316.

In overruling the trial court's ruling excluding the evidence at trial, the New Jersey Superior Court held that

> some of the written material directly expresses defendant's hostility toward and hatred of black people and his concomitant desire to see them dead. This material is compellingly powerful evidence of a motive which helps to explain an otherwise inexplicable act of random violence. The material also tends to cast doubt on the credibility of defendant's self-serving statement that [the victim] initiated the confrontation by swinging his cane at [the defendant]. [*Id.* at 317.]

The court also noted that, without the evidence of the defendant's bigotry, "a jury would not know the context of [the victim's] death and might be resistant to the idea that a young man purposely would inflict deadly harm on an elderly stranger without any apparent reason such as theft or substantial provocation." *Id.* at 318. The court added that "[t]he written material also corroborates the anticipated testimony of [two prosecution witnesses] regarding defendant's race-related statements to them." *Id.* at 319.

We agree with the analysis in *Crumb* and hereby adopt it as our own. After doing so, we hold that in the present case the trial court did not abuse its discretion in admitting the other-acts evidence for the purpose of establishing defendant's motive. Similar to the evidence of racism in *Crumb*, evidence that defendant hates women and previously had acted on such hostility establishes more than character or propensity. Here, the other-acts evidence was relevant and material to defendant's motive for his unpro-

voked, cruel, and sexually demeaning attack on his victim. See also MCL 768.27; MSA 28.1050. Cf. *People v Fisher*, 193 Mich App 284, 289-290; 483 NW2d 452 (1992) ("prior acts of marital violence were admissible to show defendant's motive"); *State v Engel*, 249 NJ Super 336, 372-374; 592 A2d 572 (App Div, 1991) (the defendant's prior violent treatment of and threats to former wife, the murder victim, were admissible to establish motive); *Heyne v Caruso*, 69 F3d 1475, 1479 (CA 9, 1995) (an employer's past conduct tending to demonstrate hostility toward a certain group is relevant and admissible to show the reason behind the firing of a member of that group); *Spulak v K Mart Corp*, 894 F2d 1150, 1156 (CA 10, 1990) ("the testimony of other employees about their treatment by the defendant [employer] is relevant to the issue of the employer's discriminatory intent"). Absent the other-acts evidence establishing motive, the jurors may have found it difficult to believe the victim's testimony that defendant committed the depraved and otherwise inexplicable actions. The evidence also tends to counter defendant's self-serving testimony that the victim provoked the incident by stealing his money.

Further, after thorough review, we conclude that the trial court did not abuse its discretion in ruling that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. Accordingly, we hold that the trial court was within its discretion in admitting this evidence.

II

Next, defendant argues that there was insufficient evidence to support his convictions. We disagree. In reviewing the sufficiency of the evidence in a criminal case, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

First, defendant claims that there was insufficient evidence to support his conviction of assault with intent to commit murder. In order to prove this crime, the prosecution must establish (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996); *People v Warren (After Remand)*, 200 Mich App 586, 588; 504 NW2d 907 (1993). "The intent to kill may be proven by inference from any facts in evidence." *Id.*

In the present case, the victim testified that defendant knocked her down and repeatedly beat the back of her head against a paved sidewalk. Thereafter, defendant threw the victim against the wall of his house, pulled her inside by her hair, punched her in the eye, and then hit her on her head and shoulder with a baseball bat. The victim further testified that defendant allowed his dog to repeatedly bite her legs while she was incapacitated. This testimony is sufficient for a reasonable factfinder to find all the elements of assault with intent to commit murder beyond a reasonable doubt.

Second, defendant contests his kidnapping conviction, claiming that there was insufficient evidence of

"secret confinement." Again, we disagree. In *People v Jaffray*, 445 Mich 287, 300-301; 519 NW2d 108 (1994), the Supreme Court held that "a kidnapping conviction may be premised on a showing of confinement that in fact is secret *or* upon a showing of forcible seizure or confinement with intent to secretly confine, whether or not the confinement remains a secret." On the basis of the totality of the circumstances" in *Jaffray*, the Supreme Court concluded that sufficient evidence of secret confinement was established where the defendant tied the victim to a pole and gagged his mouth. The *Jaffray* Court opined that, "[c]learly, this action was taken by Jaffray to prevent [the victim] from communicating his plight to others, in an effort to preserve the secrecy of the confinement." *Id.* at 304.

In the present case, defendant forced the victim into his house, tied her limbs together with shoelaces, stripped her naked, placed a sock in her mouth, and taped her mouth shut. These actions were sufficient to support a reasonable factfinder's conclusion that defendant confined the victim and intended to keep the confinement secret. Defendant's subsequent decision to release the gag does not negate the fact that a kidnapping had occurred. In addition, defendant evidenced a continuing intent to secretly confine the victim even after releasing the gag by keeping constant watch over her, claiming that he had cut the telephone lines, and telling her that escape was impossible. Moreover, defendant never allowed the victim to leave. Under these circumstances, a rational factfinder could conclude that defendant intended to secretly confine the victim. *Id.* at 304, 309.

Affirmed.