# Court of Appeals, State of Michigan

## ORDER

Brenda Stumbo v Karen Lovejoy Roe

Docket No.   353695

LC No.     20-000443-CZ

Jane M. Beckering
Presiding Judge

Jane E. Markey

Mark T. Boonstra
Judges

The June 5, 2020 majority opinion is hereby AMENDED to correct clerical errors.

On page 1, the second sentence of the paragraph is corrected to read: The failure to supply a facially proper Affidavit of Identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot.

On pages 1-2, the fourth sentence of the paragraph is corrected to read: The trial court predicated its disqualification of Roe's candidacy on the finding that the AOI filed by Roe was "facially defective" because Roe had failed to strictly comply with the attestation instructions issued by the Secretary of State under MCL 168.31.

On page 2, the seventh sentence of the paragraph is corrected to read: Rather, we hold that as long as the AOI has been signed by the candidate and notarized in a manner allowed under MCL 55.285, the AOI strictly complies with the attestation requirements implicit in MCL 168.558 and the clerk has a legal duty to certify the affiant to the board of election commissioners for placement on the ballot.

Footnote 4 is corrected to read: Although a signature date that pre-dates the notarization date might call into question the accuracy or veracity of the representations the affiant is making as of "the date of the affidavit," the accuracy of Roe's representations in her AOI is not before this Court.

In all other respects, the June 5, 2020 majority opinion remains unchanged.

_____
Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

June 11, 2020
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

BRENDA STUMBO and LARRY DOE,

      Plaintiffs-Appellees,

v

KAREN LOVEJOY ROE,

      Defendant,

and

HEATHER JARRELL ROE,

      Defendant-Appellant.

FOR PUBLICATION
June 5, 2020
9:00 a.m.

No. 353695
Washtenaw Circuit Court
LC No. 20-000443-CZ

Before: BECKERING, P.J., and MARKEY and BOONSTRA, JJ.

BOONSTRA, J.

Our Supreme Court instructs that a candidate for elected office must strictly comply with the pre-election form and content requirements identified in the Michigan Election Law, MCL 168.1 *et seq*., in the absence of any statutory language expressly indicating that substantial compliance with the statute's requirements suffices. *Stand Up For Democracy v Secretary of State*, 492 Mich 588, 594, 600-608, 619; 822 NW2d 159 (2012) (opinion by Mary Beth Kelly, J.); *id*. at 620 (opinion by Young, C.J.); *id*. at 637, 640-641 (opinion by Markman, J.). The failure to supply a facially proper AOI, i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot. *Berry v Garret*, 316 Mich App 37, 43-45; 890 NW2d 37 (2016). Relying on *Stand Up For Democracy* and *Berry*, the Washtenaw Circuit Court ordered defendant Heather Jarrell Roe disqualified from placement on the August 4, 2020 primary election ballot for the office of Ypsilanti Township Clerk. The trial court predicated its disqualification of Roe's candidacy on the finding that the Affidavit of Identity ["AOI"] filed by Roe was "facially defective" because Roe had failed to strictly comply with the

-1-

attestation instructions issued by the Secretary of State under MCL 168.31. We granted leave[1] to address whether a fatal defect exists in an AOI required by MCL 168.558 where the candidate's signature date differs from the notarization date.[2] We conclude that a fatal defect does not exist under such circumstances. Rather, we hold that as long as the AOI has been signed by the candidate and notarized in a manner allowed under MCL 168.31, the AOI strictly complies with the attestation requirements implicit in MCL 168.558 and the clerk has a legal duty to certify the affiant to the board of election commissioners for placement on the ballot. Accordingly, we reverse the trial court.

I

Roe currently serves as a Ypsilanti Township Trustee. On March 2, 2020, Roe filed the necessary paperwork to be placed on the August 4th primary ballot as the incumbent candidate for the office of Ypsilanti Township Trustee. On April 21, 2020, however, Roe withdrew her candidacy for that elected office. She immediately thereafter filed paperwork to run for the office of Ypsilanti Township Clerk.

Under MCL 168.558(1), a candidate filing a nominating petition or a filing fee in lieu of nominating petition must also file an AOI, containing the candidate's name and address, among other information useful to establishing the candidate's identity. The Secretary of State provides

---

[1] Defendant Heather Roe initiated this appeal by filing a claim of appeal. This Court has jurisdiction of an appeal of right filed by an aggrieved party from "[a] final judgment or order of the circuit court" as defined in MCR 7.202(6), MCR 7.202(A)(1), or from "[a] judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule," MCR 7.203(A)(2). MCR 7.202(6)(a)(i) defines a final order in a civil case as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties." The May 29, 2020 order struck Roe's name from the primary election ballot. It did not resolve any of the other requests for relief set forth in the complaint, however. Because the order did not dispose of all the claims and adjudicate the rights and liabilities of the parties, it is not a final order under MCR 7.202(6)(a)(*i*). The fact that the May 29, 2020 order contains language indicating that it "is entered pursuant to MCR 2.602 and closes this case" is not controlling of this Court's jurisdiction. *Faircloth v Family Independence Agency*, 232 Mich App 391, 400; 591 NW2d 314 (1998). In lieu of dismissing the claim of appeal, we treat the claim of appeal as an application for leave to appeal and grant the application.

[2] The question we address in this opinion is one of law. We have not looked to extrinsic evidence to explain away the obvious facial deficiency in Roe's AOI, as asserted by the dissent. Rather, we looked to the plain and unambiguous language of MCL 168.558 and found no express or implicit requirement that the candidate affiant must date the AOI before a notary. We do not believe, as the dissent does, that Roe may be held to strict compliance with a dating requirement imposed by the Secretary of State that requires more of the candidate than MCL 168.558 requires. Consequently, whether Roe predated the affidavit or simply misdated the affidavit is wholly irrelevant to a determination whether the affidavit facially complies with the notarization requirement implicitly imposed by MCL 168.558(1).

-2-

a form AOI for use by candidates. This form AOI includes a space designated for the candidate's signature. To the immediate right of the signature space is a space designated for the candidate to record the date he or she signed the AOI. The form AOI also provides space for a notary to attest to the identity of the affiant signing the AOI. The AOI filed with the township clerk by Roe bears Roe's signature and a signature date of "04/20/2020." Her AOI was notarized by Brent W. Royal on "the 21st day of April, 2020."[3]

The township clerk accepted Roe's AOI for filing and qualified Roe as a candidate for the office of Ypsilanti Township Clerk.

Plaintiffs Brenda Stumbo, a Ypsilanti Township Supervisor, and Larry Doe, the Ypsilanti Township Treasurer, then commenced the underlying proceedings in the Washtenaw Circuit Court, seeking, in part, a declaration that Roe was disqualified from placement on the August 4, 2020 primary election ballot because Roe had filed a facially-improper AOI where her signature date differed from the notarization date. Plaintiffs also sought an order striking Roe's name from the primary ballot. The trial court granted this requested relief.

II

This appeal involves the application and construction of § 558 of the Michigan Election Law, MCL 168.558. We review de novo issues concerning the application and construction of a statute. *Berry v Garret*, 316 Mich App 37, 41; 890 NW2d 37 (2016).

This Court's primary task in interpreting and applying a statute is to discern and give effect to the intent of the Legislature. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). The words of the statute are the most reliable evidence of the Legislature's intent and this Court must give each word its plain and ordinary meaning. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). "In interpreting the statute at issue, [this Court] . . . consider[s] both the plain meaning of the critical words or phrase as well as 'its placement and purpose in the statutory scheme.'" *Sun Valley Foods Co*, 460 Mich at 237, quoting *Bailey v United States*, 516 US 137, 145; 166 S Ct 501; 133 L Ed 2d 472 (1995). When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute

---

[3] On April 8, 2020, Michigan Governor Gretchen Whitmer issued Executive Order 2020-41 in response to the COVID-19 pandemic. The order suspended strict compliance with the rules and procedures under the Michigan Law on Notarial Acts, 2003 PA 238, MCL 55.261 *et seq*., to the extent that the act requires a notary to be in the physical presence of an individual seeking the notary's services. Executive Order 2020-41, ¶ 3. This Executive Order authorized the use of "two-way real-time audiovisual technology" that allows for "direct interaction between the individual seeking the notary's services . . . and the notary, wherein each can communicate simultaneously by sight and sound through an electronic device or process at the time of the notarization." Executive Order 2020-41, ¶ 5(a). This order was in effect at the time that Royal notarized Roe's AOI. Roe represents that the notarization was accomplished through the use of two-way audiovisual technology in compliance with the Executive Order. We make no findings regarding the accuracy of Roe's representation.

must be enforced as written. *Ronnisch Construction Group v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

Subsection 558(1) requires that a person "filing a nominating petition, qualifying petition, filing fee, or affidavit of candidacy for a . . . township . . . office in any election . . . shall file with the officer with whom the petitions, fee, or affidavit is filed 2 copies of an affidavit of identity." MCL 168.558(1). Subsection 558(2) sets forth the required contents of an AOI as follows:

> An affidavit of identity must contain the candidate's name and residential address; a statement that the candidate is a citizen of the United States; the title of the office sought; a statement that the candidate meets the constitutional and statutory qualifications for the office sought; other information that may be required to satisfy the officer as to the identity of the candidate; and the manner in which the candidate wishes to have his or her name appear on the ballot. If a candidate is using a name that is not a name that he or she was given at birth, the candidate shall include on the affidavit of identity the candidate's full former name. [MCL 168.558(2).]

Subsection 558(4) also addresses the required contents of an AOI, and in its entirety reads:

> An affidavit of identity must include a statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid; and a statement that the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both. If a candidate filed the affidavit of identity with an officer other than the county clerk or secretary of state, the officer shall immediately forward to the county clerk 1 copy of the affidavit of identity by first-class mail. The county clerk shall immediately forward 1 copy of the affidavit of identity for state and federal candidates to the secretary of state by first-class mail. An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section, or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section. [MCL 168.558(4).]

The parties do not dispute that Roe's AOI contains a facially-obvious defect. The date that accompanies her signature differs from the date of the notarization. Rather, the parties dispute the import of this defect. The question becomes, then, whether Roe's AOI constitutes a facially-proper affidavit for purposes of MCL 168.558 despite the discrepancy between the dates found in the attestation section of the AOI. We conclude the AOI at issue is strictly compliant with the requirements of MCL 168.558.

The plain language of § 558 dictated that candidate Roe reveal a variety of personal identifying information, including her name and address, among other information. MCL 168.558(2). The plain language of MCL 168.558(2) also required Roe to include in her AOI

-4-

a statement that she is a citizen of the United States, and a statement that she meets the constitutional and statutory qualifications for the office sought, which also must be identified in the AOI. The plain language of MCL 168.558(4) required Roe to include in the AOI a statement that "as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election . . . have been filed or paid." Finally, the plain language of MCL 168.558(4) required Roe to include in the AOI a statement that "the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both." Roe provided all of the requested and required identification information and statements in her completed AOI. In this regard, her AOI strictly complies with the requirements of MCL 168.558(2) and (4).

Oddly, MCL 168.558 contains no express requirement that the affidavit be signed by the candidate or that the identity of the signatory be attested to by a notary. Nevertheless, MCL 168.558(1) does require a candidate for office to file an "affidavit" of identity. An affidavit does not become an affidavit until two essential events occur–the affidavit must be signed by the affiant in the presence of a notary, who then attests to the identity of the affiant. MCL 55.285; *People v Sloan*, 450 Mich 160, 177 n 8; 538 NW2d 380 (1995), overruled on other grounds, *People v Wager*. 460 Mich 118, 123; 594 NW2d 487 (1999); *Rataj v City of Romulus*, 306 Mich App 735, 755 n 8; 858 NW2d 116 (2014); *Holmes v Michigan Capital Medical Center*, 242 Mich App 692, 711; 620 NW2d 319 (2001). Thus, the signature and notarization requirements are implicit in MCL 168.558.

There is no question that Roe signed her AOI. There is also no question that the notarization on the AOI is facially compliant with MCL 55.285(1)(b), (4), (6)(c), which authorizes a notary to witness and attest to a signature made in the presence of the notary. A review of the AOI shows that notary Brent W. Royal attests in that notarization that Roe signed her AOI before him on April 21, 2020. Thus, we conclude that Roe strictly complied with the attestation requirement implicit in MCL 168.558.[4] The trial court erred in reaching a contrary conclusion.

The trial court concluded that Roe's AOI was fatally defective because Roe's signature date did not match the notarization date. MCL 168.558 neither expressly nor implicitly imposes a requirement that the candidate must date the affidavit. Rather, the signature date requirement was added by the Secretary of State, to whom the Legislature has delegated the authority to issue instructions for the conduct of elections and "[p]rescribe and require uniform forms . . . the secretary of state considers advisable for use in the conduct of elections and registrations." MCL 168.31(1)(a), (e); *Coalition to Defend Affirmative Action & Integration v Board of State Canvassers*, 262 Mich App 395, 405; 686 NW2d 287 (2004), lv den 471 Mich 939 (2004).

---

[4] Although a signature date that pre-dates the notarization date might call into question the accuracy of veracity of the representations of the affiant is making as of "the date of the affidavit," the accuracy of Roe's representations in her AOI is not before this Court.

The instructions that accompany the form AOI prescribed by the Secretary of State provide in pertinent part:

**5.  statements and attestation**

Fill in the circle to indicate you meet the statutory and constitutional requirements for the office sought and are a citizen.  **Read, sign, and date the attestation.  The affidavit is not complete until it has been signed and notarized.**  [Emphasis added.]

These instructions do not have the force of law.  Moreover, by the plain language of the instructions, the entry of a date by the affiant candidate is not an express impediment to rendering the writing a proper and valid affidavit, as while they instruct the person to "read, sign, and date" the attestation, they also provide that the affidavit is not complete until it has been "signed and notarized," with no mention of the affiant candidate's entry of a date.  And, MCL 55.285 does not require a notary to attest to the accuracy of the date affixed to the writing by the affiant.  Although the Secretary of State may advise a candidate to date the AOI at the time of signing, we cannot conclude that the Secretary of State may create an impediment to the ballot by imposing a date requirement not sanctioned by the Legislature or necessary to the establishment of a proper and valid affidavit.[5]

Holding Roe to strict compliance with the requirements of MCL 168.558, as we must, we conclude, for the reasons set forth above, that Roe filed a facially-compliant AOI for purposes of MCL 168.558.  Accordingly, the contrary decision of the trial court is reversed, the May 29, 2020 order of the trial court is vacated, and this matter is remanded to the trial court for entry of an order directing that Roe's candidacy be certified to the board of election commissioners.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane M. Beckering

---

[5] We reiterate that an AOI must be properly notarized,  and that notarization requires that the notary witness the signature on the date of the notarization.  MCL 55.285.  Nothing in our opinion diminishes the requirement that a notary must actually witness the affiant candidate's signature.  Nor does our opinion preclude a properly advanced challenge to the validity of the notarization.  MCL 168.558 provides a clerk with only the authority to certify candidates who complied with the statute.  MCL 168.558(4).  And, in the present matter, there is no facial defect in Roe's AOI that renders the AOI nonconforming to the requirements of MCL 168.558.